**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION**

_____

STEVEN SCHWARTZ,                        CV 08-32-M-JCL

            Plaintiff,

     vs.                                    ORDER

METRO AVIATION, INC.,

            Defendant.

_____

     Pending before the Court is Defendant Metro Aviation, Inc.'s Motion for

Summary Judgment filed under authority of Fed. R. Civ. P. 56.  For the reasons

stated below, the Court concludes that Metro Aviation's motion is appropriately

denied.

## I.     BACKGROUND

     This action arises from Metro Aviation's termination of Plaintiff Steven

Schwartz's employment.  Schwartz began his employment with Metro Aviation as

an aviation mechanic in March 2002, at Metro's Missoula airport facility.  The

parties agree Schwartz is an experienced aircraft mechanic.  He is authorized by

the Federal Aviation Administration (FAA) to inspect aircraft for annual

ORDER - Page 1

inspections and for the return of an aircraft to service.  Steven Schwartz Deposition (September 12, 2008) at 11.  Schwartz's job duties with Metro Aviation required him to inspect and maintain aircraft in an airworthy condition. Schwartz Depo. at 21.

On May 6, 2007, a bird struck the radar dome on one of Metro Aviation's helicopters during flight.  The pilot landed the aircraft near Arlee, Montana, and called Schwartz to come and inspect the damage to the helicopter.  Schwartz did not notify any supervisor about the bird strike incident before he traveled to Arlee.

Upon inspecting aircraft, Schwartz found the radar dome was "pushed in" from the bird strike, but he made no immediate repairs to the dome.  At the time, Schwartz did not know if the radar equipment itself sustained any damage, but he later explained that the pilots do not use the radar in any event.  Schwartz Depo. at 36.

Following his inspection, Schwartz determined the helicopter was "airworthy" or "safe to fly".  Schwartz Depo. at 44.  He made an entry on the aircraft's flight log book which reads as follows:  "inspected bird strike. determined airworthy for 1 time flight at reduced airspeed to airport[.]"  Schwartz Depo. at 44, Ex 4.

Schwartz was aware of the availability of a "ferry permit" from the FAA

ORDER - Page 2

which would allow an aircraft to be flown to some other location for an inspection. Schwartz, however, did not obtain a permit to ferry the helicopter from Arlee. Schwartz simply authorized the pilot to fly the helicopter to Missoula so that any needed repairs could be made at Metro Aviation's facility. Schwartz admits he did not have authority to allow a pilot to make a one-time flight. Schwartz Depo. at 84.

The helicopter pilot contacted Metro Aviation's headquarters in Louisiana on May 6, 2007, regarding the bird strike. Ultimately, Schwartz's log entry was faxed to Milton Geltz, Metro Aviation's Managing Director in Louisiana. After reviewing Schwartz's log entry Mr. Geltz immediately called Schwartz and told him that the log entry was the "poorest signoff" or the "worst log entry" he had ever seen. Schwartz Depo. at 33, 50, 92. Mr. Geltz told Schwartz his employment was terminated.

Prior to the events underlying this case, Mr. Geltz had prepared a memorandum dated December 11, 2006, regarding Standardized Log Book Entries. Schwartz Depo., Ex. 3. The memorandum, which was directed to all pilots and mechanics, established a detailed five-step process for making consistent and standardized log book entries which contain certain required information. The memorandum emphasizes that compliance with the procedures

ORDER - Page 3

set forth in the memorandum is required to ensure compliance with applicable

Federal Aviation Regulations under 14 C.F.R., Part 43.  Schwartz Depo., Ex. 3 at

3.  Schwartz was aware of the memorandum.  Schwartz Depo. at 39.[1]

Schwartz took Mr. Geltz's criticism of his log entry to mean that the entry

did not comply with the log entry standards set forth in Mr. Geltz's December

2006 memorandum.  The deficiency Schwartz finds with his entry is that it does

not include the helicopter's serial number.  Schwartz Depo. at 44.

Schwartz ultimately received a warning notice dated May 9, 2007, from the

FAA regarding the events surrounding the bird strike of May 6, 2007.  Metro

Aviation's Supplemental Br., Ex. A.  The warning references 14 C.F.R. § 43.11

which details the log book entries that are required with respect to the maintenance

and inspection of an aircraft approved for return to service.  The warning does not

---

[1]Both parties have submitted exhibits relative to the pending summary judgment motion, such as Mr. Geltz's memorandum, but the parties have not authenticated the exhibits.  Evidentiary materials or exhibits submitted for consideration with regard to a summary judgment motion must be "authenticated by affidavits or declarations of persons with personal knowledge through whom they could be introduced at trial."  *Zoslaw v. MCA Distributing Corp.*, 693 F.2d 870, 883 (9th Cir. 1982).  See also *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 774 (9th Cir. 2002) (adding that authentication may occur by any manner permitted by Fed. R. Evid. 901(b) or 902).  Nonetheless, neither party objects to the authenticity of any of the exhibits, and the Court will proceed to consider the exhibits under the stipulation set forth in paragraph 6 of the scheduling order entered in this case on June 4, 2008.

expressly identify which provisions of section 43.11 were violated.

Schwartz contends that after his termination Metro Aviation provided him with various and inconsistent reasons for his termination.  In a letter dated July 12, 2007, Metro Aviation, through its counsel, advised Schwartz he was terminated for failing to notify management of the bird strike incident as required by company policy.  Schwartz's Statement of Genuine Issues (SGI), Ex. C.  Metro Aviation's letter stated Schwartz was required to notify management due to the potential for damage to the aircraft caused by the bird strike so that a proper repair could be formulated, or a ferry permit could be obtained from the FAA.  The letter further stated Metro Aviation's Operating Specifications and the Eurocopter maintenance and repair manual did not allow Schwartz to make an airworthiness determination under the circumstances of the damage to the radar dome.  Thus, Schwartz's conduct resulted in a violation of Federal Aviation Regulations.

Metro Aviation's July 12, 2007 letter also noted defects in both the form and content of Schwartz's log book entry which violated Metro Aviation's operations manual and Federal Aviation Regulations.  The letter stated that applicable rules and procedures did not allow for the "return to service" entry Schwartz made, that Schwartz did not have authority to allow the helicopter to fly in view of the physical damage it sustained, and that his log entry failed to identify

ORDER - Page 5

the airport to which he allowed the aircraft to fly.  Schwartz's SGI, Ex. C.

Metro Aviation's new counsel sent Schwartz a second letter dated August 23, 2007, and provided Schwartz with copies of Metro's policies numbered 400-411 regarding aircraft maintenance and return-to-service procedures.  Schwartz's SGI, Ex. E.  Metro Aviation specifically directed Schwartz's attention to policies 403 and 406 relative to proper log book entries.  The letter further explained that Metro Aviation's policies referenced the Federal Aviation Regulations which require that a ferry permit be obtained when maintenance on a damaged aircraft is deferred until after the aircraft is moved to a different location.

Metro Aviation's August 23 letter also referenced unspecified company policies, procedures, an operations manual, and a "company information memo manual" regarding "return to service" procedures.  The letter stated the referenced procedures required "that for any return to service, there has to be approved or acceptable data used to effect the repair."  Schwartz's SGI, Ex. E. at 1.  Metro Aviation asserted Schwartz failed to follow the proper procedures for returning the helicopter to service, and failed to obtain a ferry permit from the FAA which would allow the aircraft to be flown before the repairs were made .  Metro Aviation's August 23 letter concluded by stating Schwartz's termination was based on his unsatisfactory performance of his job duties.  Schwartz's SGI, Ex. E.

ORDER - Page 6

Schwartz commenced this action in the Montana Fourth Judicial District Court, Missoula County, on January 30, 2008.  Schwartz's Complaint alleges Metro Aviation is liable under the Montana Wrongful Discharge From Employment Act at Mont. Code Ann. § 39-2-901 et seq. with respect to its termination of his employment.  Metro Aviation removed the case to federal court on March 4, 2008, invoking the Court's diversity of citizenship jurisdiction over Schwartz's state law claim as provided in 28 U.S.C. § 1332(a).

## II.   APPLICABLE LAW

### A.  Summary Judgment Standards

Federal Rules of Civil Procedure 56(c) entitles a party to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  A party moving for summary judgment who does not have the burden of persuasion at trial, must produce evidence which either:  (1) negates an essential element of the non-moving party's claim, or (2) shows that the non-moving party does not have enough evidence of an essential element to ultimately carry his burden at trial.  *Nissan Fire & Marine Ins. Co. Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  Once the moving party has satisfied its burden, the non-moving party must go beyond the pleadings

and designate by affidavits, depositions, answers to interrogatories, or admissions

on file, "specific facts showing that there is a genuine issue for trial." *Celotex*

*Corp. v. Cattrett*, 477 U.S. 317, 324 (1986).  An issue of fact is "genuine" if there

is sufficient evidence for a reasonable fact finder to find for the non-moving party.

*Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248-49 (1986).  A fact is "material"

if it may affect the outcome of the case.  *Id*. at 248.

"In considering a motion for summary judgment, the court may not weigh

the evidence or make credibility determinations, and is required to draw all

inferences in a light most favorable to the non-moving party."  125 F.3d 732, 735

(9th Cir. 1997), *abrogated on other grounds as noted in Shakur v. Schriro*, 514

F.3d 878, 884-85 (9th Cir. 2008).

### B.  Application of Montana Law

Because jurisdiction over this action is founded upon diversity of

citizenship, the Court applies the substantive law of Montana, the forum state.

*Medical Laboratory Mgmt. Consultants v. American Broadcasting Companies,*

*Inc.*, 306 F.3d 806, 812 (9th Cir. 2002).

## III.   DISCUSSION

Schwartz's sole legal claim for relief is advanced under the Montana

Wrongful Discharge From Employment Act (WDEA) at Mont. Code Ann. § 39-2-

ORDER - Page 8

901 et seq.  The WDEA protects an employee against a wrongful discharge as follows:

> (1) A discharge is wrongful only if:
>
> > (a) it was in retaliation for the employee's refusal to violate public policy or for reporting a violation of public policy;
> >
> > (b) the discharge was not for good cause and the employee had completed the employer's probationary period of employment; or
> >
> > (c) the employer violated the express provisions of its own written personnel policy.

Mont. Code Ann. § 39-2-904(1).  An employee bears the burden of proving his or her termination from employment was wrongful, or not for good cause, under § 39-2-904(1).  *Becker v. Rosebud Operating Services, Inc.*, 2008 MT 285, ¶ 24, 345 Mont. 368, ¶ 24, 191 P.3d 435, ¶ 24.

The WDEA defines "good cause" as "reasonable job-related grounds for dismissal based on a failure to satisfactorily perform job duties, disruption of the employer's operation, or other legitimate business reason."  Mont. Code Ann. § 39-2-903(5).

> A legitimate business reason is one that is "neither false, whimsical, arbitrary or capricious, and it must have some logical relationship to the needs of the business."

*Becker*, 2008 MT 285, ¶ 24 (quoting *Kestell v. Heritage Health Care Corp.*, 259

Mont. 518, 525, 858 P.2d 3, 7 (1993)).

Although the plaintiff ultimately bears the burden of proving his or her WDEA claim, in the context of a summary judgment motion filed by the employer the summary judgment procedures discussed above impose a preliminary burden on the employer.  As the moving party the employer has "the burden of establishing there [are] no issues of material fact regarding good cause [...] entitling [the employer] to judgment as a matter of law."  *Arnold v. Yellowstone Mountain Club, LLC*, 2004 MT 284, ¶ 24, 323 Mont. 295, ¶ 24, 100 P.3d 137, ¶ 24.  If the employer satisfies this initial burden, then to survive summary judgment on the issue of good cause "the employee may either prove that the given reason for the discharge is not 'good cause' in and of itself, or that the given reason 'is a pretext and not the honest reason for the discharge.'"  *Becker*, at ¶ 24 (quoting *Johnson v. Costco Wholesale*, 2007 MT 43, ¶¶ 27-28, 336 Mont. 105, ¶¶ 27-28, 152 P.3d 727, ¶ 27-28).  Summary judgment is appropriately granted under the WDEA, however, if the nonmoving party fails to present any evidence identifying a genuine issue of material fact relative to the WDEA claim.  *Arnold*, 2004 MT 284, ¶ 26.

In its consideration of a WDEA claim, the court must balance an employer's right and discretion to determine who it will employ and who it will retain in

ORDER - Page 10

employment against the employee's legitimate interests to secure employment.

*Vettel-Becker v. Deaconess Medical Center of Billings, Inc.*, 2008 MT 51, ¶ 38,

341 Mont. 435, ¶ 38, 177 P.3d 1034, ¶ 38  (citing *Buck v. Billings Montana*

*Chevrolet, Inc.*, 248 Mont. 276, 282, 811 P.2d 537, 540 (1991)).

> The balance should favor an employee who presents evidence, and not mere speculation or denial, upon which a jury could determine that the reasons given for his termination were false, arbitrary or capricious, and unrelated to the needs of the business.

*Johnson*,  2007 MT 43, ¶ 23 (quoting *Kestell*, 259 Mont. at 526, 858 P.2d at 8).

In arguing there exists no genuine issue of material fact relative to the issue

of good cause for Schwartz's termination, Metro Aviation relies, in part, on the

various reasons stated in the July 12 and August 23, 2007 letters detailed above.

In sum, those letters explain that Metro Aviation terminated Schwartz for:  (1)

failing to notify management of the incident and damage; (2) failing to consult

with management to formulate an appropriate plan for repair; (3) failing to obtain

an FAA ferry permit as required under the circumstances; (4) making an

airworthiness determination and allowing an aircraft to return to service under

circumstances in which Schwartz did not have authority to do so; (5) failing to

follow company policies regarding "return to service" procedures; (6) violating

Federal Aviation Regulations; and (7) making a deficient log book entry in

ORDER - Page 11

violation of company policy.

In assessing Metro Aviation's argument, the Court first notes that there exists an issue as to whether those explanatory or supplemental reasons are relevant and admissible in this case.  In general, an employer may only rely on the reasons stated in its original discharge letter or communication to the employee. *Jarvenpaa v. Glacier Electric Cooperative, Inc.*, 292 Mont. 118, 128, 970 P.2d 84, 90 (1998).  Under the WDEA, the only reason for the discharge which the court may consider is the reason set forth in the employer's discharge communication; other collateral reasons are irrelevant and inadmissible as evidence.  *Galbreath v. Golden Sunlight Mines, Inc.*, 270 Mont. 19, 23, 890 P.2d 382, 385 (1995). Similarly, an employer cannot rely upon after-acquired evidence that was not known to the employer at the time of the termination to establish good cause for the termination.  *Flanigan v. Prudential Federal Savings & Loan Assoc.*, 221 Mont. 419, 431, 720 P.2d 257, 264 (1986).

At the same time, additional evidence relied upon by an employer which tends to prove the truth of the original articulated reason for the discharge is relevant and admissible.  *Jarvenpaa*, 292 Mont. at 128, 970 P.2d at 90.  In other words, evidence offered "to substantiate the reasons [ ] already given" is admissible.  *Id*.  In *McConkey v. Flathead Electric Cooperative*, 2005 MT 334,

ORDER - Page 12

330 Mont. 48, 125 P.3d 1121 (2005) the original express reasons given by the employer for a termination were that the employee's conduct "caused substantial rate increases to members[, and] negatively impacted the Cooperative financially for the years 2000 to 2001." *McConkey*, at ¶ 30.  In granting summary judgment for the employer, the district court's relied on the employer's "debt/equity ratio, its substantial electric power cost increases from contracts negotiated by [the plaintiff], and the necessity to retain bankruptcy counsel" as sufficient reasons establishing good cause for the plaintiff's termination.  *Id*.  The Montana Supreme Court affirmed the district court's reliance on those specific reasons as they merely substantiated the negative financial impact reason previously given by the employer.  *Id*.

In this case, the initial reason Metro Aviation gave Schwartz at the time of his termination was that his May 6, 2007 log entry was the "poorest signoff" or the "worst log entry" Mr. Geltz had ever seen.  Therefore, the Court must consider that statement as the sole reason for Schwartz's termination, unless Metro Aviation can establish that the later articulated reasons it provided Schwartz merely substantiate this original reason given by Mr. Geltz.

Metro Aviation has failed to demonstrate the absence of a genuine issue of material fact regarding the issue of whether "good cause" existed to terminate

Schwartz.  Metro Aviation asserts that Schwartz's log entry is deficient, but only through its vague and unspecified references to Mr. Geltz's 2006 memorandum and to the Federal Aviation Regulations.  As discussed below, Metro Aviation has not specifically identified any precise provision of either the memorandum or the regulations with which Schwartz's log entry failed to comply.

Metro Aviation relies heavily on Schwartz's "admission" that his log entry was defective.  Although Schwartz conceded his log entry does not comport with the requirements of the 2006 memorandum, the only specific deficiency he concedes is the absence of the helicopter's serial number.  Metro Aviation concedes, however, that it never complained about the absence of the serial number.[2]  Metro Aviation's Reply Brief at 4.  Therefore, the absence of the serial number, and Schwartz's admission of non-compliance do not establish good cause for Schwartz's termination.

Metro Aviation suggests Schwartz's log entry is defective because he failed to note the repairs he made.  Metro Aviation's Brief in Support at 5.  However, Schwartz did not make any repairs to the helicopter in Arlee, and Mr. Geltz's

---

[2]The Court notes the parties do not explain the fact that the log book sheet on which Schwartz made his entry includes "SN 3233" in the "title line" as required by Mr. Geltz's 2006 memorandum.  Schwartz Depo., Ex. 3 at 1, and Ex. 4.

ORDER - Page 14

memorandum expressly states that "[i]f there is no maintenance, skip to step Three for inspections."  Schwartz Depo., Ex. 3 at 1.  Metro Aviation has failed to cite to any provision of the memorandum that requires the entry of a repair note, especially when no repair is made.

Metro Aviation also contends Schwartz was required to note the date on his log entry.  Undisputedly, Schwartz's log entry includes the note "5-6-07" as the date of his entry.  Schwartz Depo., Ex. 4.

Metro Aviation next asserts Schwartz's log entry failed to state the airport to which he authorized the helicopter to fly.  Metro Aviation's Statement of Undisputed Facts at ¶ 7.  It does not, however, cite to any policy or regulation which required Schwartz to identify the destination airport in his log entry.

Metro Aviation also contends the log entry is deficient based on its assertion that there is no policy or regulatory provision permitting Schwartz to make a "return to service" entry on the log for an aircraft that was "damaged".  Without citing to any evidentiary matters, or to any policy or regulatory provision, Metro Aviation's contention suggests the helicopter was damaged to the extent that it was not airworthy and could not be returned to service as allowed by Schwartz. However, the record, as developed, does not establish that the helicopter was not airworthy.

ORDER - Page 15

The Court is cognizant of both the "airworthiness" requirements under the Federal Aviation Regulations, and the availability of a "ferry permit" from the FAA for flying an aircraft which is not generally airworthy.  The Federal Aviation Regulations require, generally, that all aircraft be airworthy, and they set airworthiness standards for all types of aircraft.  *See e.g.* 14 C.F.R., Parts 23 through 36.  The owner of an aircraft must obtain an airworthiness certificate from the FAA for the aircraft.  14 C.F.R., Part 21, Subpart H.  Metro Aviation, however, fails to establish precisely what rendered the subject helicopter non-airworthy after the bird strike to the radar dome.  The Court appreciates that Schwartz conceded in his deposition that he did not know if the radar itself was damaged, but Metro Aviation has not established that the possible damage to the radar precluded the helicopter from being airworthy.   Metro Aviation's mere assertion that the aircraft was "damaged" fails to specify how, as a matter of fact and a matter of regulatory law, the "damage" rendered the aircraft unairworthy under the Federal Aviation Regulations.

Additionally, Metro Aviation has failed to explain its contention that Schwartz was not authorized to make the airworthiness determination that he made in his log entry.  As noted above, Schwartz testified he is authorized by the FAA to inspect aircraft and to "return aircraft to service", and that he was employed by

ORDER - Page 16

Metro Aviation to "maintain [...] aircraft in an airworthiness condition."  Schwartz Depo. at 11, 21.  Therefore, Metro Aviation has not explained why Schwartz's "airworthy" note in his log entry was deficient or unauthorized.

In this regard, Metro Aviation relies on Schwartz's admission in his deposition that he did not have authority to make the decision to allow the "one-time flight" as reflected in his log entry.  When asked about his log entry Schwartz testified as follows:

Q. [...] What does "airworthy" mean to you as a –

A.  I felt that the aircraft was in a condition to be flown.

Q.  And do you have authority to make that decision of a one-time flight?

A.  Not the one-time flight.

Q.  You don't have authority to make that decision.

A.  No.

Schwartz Depo. at 83-84.

Upon consideration of the quoted testimony, the Court finds Schwartz's "admission" is not conclusive and it requires further explanation.  The nature and subject of his admission raises several factual issues.  First, Schwartz's admission is only of his lack of authority to permit a one-time flight, not his lack of authority to determine airworthiness in general.  Second, the context or extent of his

admission requires further explanation.  It is not clear under what circumstances Schwartz conceded he would not have authority to authorize the "one-time" flight. It is undisputed that Schwartz was authorized to, and was employed to determine airworthiness.  Having determined that the helicopter was airworthy, there is no explanation as to why Schwartz needed to further authorize the flight to Missoula. The helicopter was apparently airworthy prior to the bird strike, and a legitimate inference to be drawn is that Schwartz merely confirmed the helicopter was still airworthy following the bird strike.  On the basis of the record, it can also be inferred that Schwartz wanted the helicopter immediately taken to Missoula so he could assess if repairs needed to be made to the radar.

As a related argument, Metro Aviation contends that since the aircraft was damaged, and thus, in its view not airworthy, Schwartz's log entry is deficient in that it reflects that he did not obtain a "ferry permit" as required under the Federal Aviation Regulations.  The regulations provide that if an aircraft does "not currently meet applicable airworthiness requirements but is capable of safe flight," the owner may obtain a "special flight permit" or "ferry permit" from the FAA to allow the aircraft to be flown "to a base where repairs, alterations, or maintenance are to be performed[.]"  14 C.F.R. § 21.197(a)(1).  Although Schwartz did not invoke this ferry permit procedure available to him, the express language of the

ORDER - Page 18

regulation, together with Schwartz's "airworthy" determination, establish that a ferry permit was not required under the circumstances of this case.  Again, Metro Aviation has failed to establish that the helicopter was not "airworthy" when it was in Arlee.

Metro Aviation also contends Schwartz's log entry reflects that he failed to follow proper procedures before returning the helicopter to service.  Metro Aviation refers to Mr. Geltz's 2006 memorandum in support of its contention, but it fails to identify any specific provision of the memorandum regarding a return to service with which Schwartz failed to comply.

Metro Aviation also refers to the Federal Aviation Regulations applicable to the return of an aircraft to service.  Metro Aviation cites to 14 C.F.R. § 43.5 which imposes specific obligations on a person seeking to approve an aircraft for "return to service".  *See also* Schwartz's SGI, Ex. E (August 23, 2007 letter citing 14 C.F.R., Part 43 relative to maintenance and airworthiness).  Specifically, § 43.5 requires that the maintenance entries set forth in 14 C.F.R. § 43.11 must be made prior to an aircraft's return to service.  Section 43.11 requires, in part, that the following maintenance record entries be made:

> (a) Maintenance record entries. The person approving or disapproving for return to service an aircraft, airframe, aircraft engine, propeller, appliance, or component part after any inspection performed in accordance with part

ORDER - Page 19

91, 125, § 135.411(a)(1), or § 135.419 shall make an entry in the maintenance record of that equipment containing the following information:

> (1) The type of inspection and a brief description of the extent of the inspection.

> (2) The date of the inspection and aircraft total time in service.

> (3) The signature, the certificate number, and kind of certificate held by the person approving or disapproving for return to service the aircraft, airframe, aircraft engine, propeller, appliance, component part, or portions thereof.

> (4) Except for progressive inspections, if the aircraft is found to be airworthy and approved for return to service, the following or a similarly worded statement--"I certify that this aircraft has been inspected in accordance with (insert type) inspection and was determined to be in airworthy condition."

14 C.F.R. § 43.11(a).

Without any explanation whatsoever, Metro Aviation merely suggests that Schwartz's log entry "clearly did not meet the FAR standards" under 14 C.F.R. § 43.11(a). Metro Aviation's Supplemental Br. at 3. Accordingly, Metro Aviation fails to specify exactly which provision of § 43.11(a) Schwartz's entry allegedly violated.

In this summary judgment proceeding, Metro Aviation bears the initial burden of establishing the absence of any issue of material fact relative to the issue of good cause. For the reasons discussed above, Metro Aviation has failed to

ORDER - Page 20

establish that Mr. Geltz's criticism of Schwartz's log entry constitutes good cause and, therefore, it is not entitled to summary judgment.

As noted above, Metro Aviation's July 12 and August 23, 2007 letters advance various other reasons which it contends justifies its termination of Schwartz. Metro Aviation, however, has made no effort to establish that any other reason which it has offered is admissible in evidence on the basis that it merely substantiates, or tends to prove the original reason for Schwartz's termination - that being that his log entry was the worst one Mr. Geltz had ever seen. *See Jarvenpaa* and *McConkey*, supra. Accordingly, absent proof that the supplemental reasons substantiate the original reason, the Court is not permitted to consider the other reasons. *See Galbreath*, supra.

Finally, Metro Aviation has provided the Court with a copy of the warning that the FAA issued to Schwartz. The warning refers to unspecified violations of 14 C.F.R. § 43.11(a) with respect to Schwartz's log entry. The warning, however, was issued on May 9, 2007, and Metro Aviation did not receive a copy of the warning until some time after December 22, 2008, when the FAA provided it to Metro Aviation in response to its Freedom of Information Act request. Metro Aviation's Supplemental Brief, Ex. A. Accordingly, the issuance and existence of the warning, and the grounds for the warning, constitute after-acquired reasons on

ORDER - Page 21

which Metro Aviation cannot rely as good cause for its termination of Schwartz.

*Flanigan*, 221 Mont. at 431, 720 P.2d at 264, supra.

## IV.    CONCLUSION

Metro Aviation has failed to establish the absence of genuine issues of material facts regarding the issue of whether it had good cause for its termination of Schwartz's employment.  There remain questions of fact regarding the sufficiency of Schwartz's log entry and whether any deficiencies that may have existed constituted good cause for his termination.

ACCORDINGLY, IT IS HEREBY ORDERED that Metro Aviation's Motion for Summary Judgment is DENIED.

DATED this 9th day of February, 2009.

  /s/ Jeremiah C. Lynch
Jeremiah C. Lynch
United States Magistrate Judge